1

2

3                                                          O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                              )
                               )
11   MARIA GURROLA; JOSÉ        )    Case No. EDCV 08-535-VAP
     GURROLA,                   )    (JCRx)
12                              )
                   Plaintiffs, )    **[Motion filed on September
13                              )    12, 2008]**
          v.                    )
14                              )    **ORDER GRANTING SUMMARY
     ALLSTATE INSURANCE         )    JUDGMENT IN FAVOR OF
15   COMPANY, a California       )    DEFENDANT ALLSTATE INSURANCE
     corporation; and DOES 1    )    COMPANY**
16   through 20, inclusive,     )
                               )
17                  Defendants. )
     _____ )
18

19        Defendant's Motion for Summary Judgment came before

20   the Court for hearing on October 6, 2008.  After

21   reviewing and considering all papers filed in support of,

22   and in opposition to, the Motion, as well as the

23   arguments advanced by counsel at the hearing, the Court

24   GRANTS Defendant's Motion for Summary Judgment.

25

26                        **I. BACKGROUND**

27        On March 7, 2008, Plaintiff Maria Gurrola filed suit

28   in California Superior Court for the County of Riverside,

1  alleging claims for breach of contract and breach of the
2  implied covenant of good faith and fair dealing against
3  Defendant Allstate Insurance Company ("Defendant").  A
4  fire on January 1, 2006 damaged Plaintiff's property,
5  insured by Defendant; Plaintiff alleges Defendant
6  mishandled her claim for damages caused by the fire.
7
8      Defendant removed the case to this Court and now
9  brings a Motion for Summary Judgment against Maria and
10  José Gurrola ("Plaintiffs")[1] arguing that the suit is
11  time-barred.
12
                    **II. LEGAL STANDARD**
13
14     A motion for summary judgment shall be granted when
   there is no genuine issue as to any material fact and the
15
   moving party is entitled to judgment as a matter of law.
16
   Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc.,
17
   477 U.S. 242, 247-48 (1986).  The moving party must show
18
   that "under the governing law, there can be but one
19
   reasonable conclusion as to the verdict."  Anderson, 477
20
   U.S. at 250.
21
22
23     Generally, the burden is on the moving party to
   demonstrate that it is entitled to summary judgment.
24
25
─────────────────
26     [1]José Gurrola is deceased and Maria Gurrola has not
   yet filed a substitution of party on behalf of his
27  estate.  The Court therefore refers to José and Maria
   Gurrola as "Plaintiffs" and refers to Maria Gurrola alone
28  by her full name.

1   <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

2   <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707

3   F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears

4   the initial burden of identifying the elements of the

5   claim or defense and evidence that it believes

6   demonstrates the absence of an issue of material fact.

7   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

8

9       Where the non-moving party has the burden at trial,

10  however, the moving party need not produce evidence

11  negating or disproving every essential element of the

12  non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.

13  Instead, the moving party's burden is met by pointing out

14  that there is an absence of evidence supporting the non-

15  moving party's case.  <u>Id.</u>

16

17      The burden then shifts to the non-moving party to

18  show that there is a genuine issue of material fact that

19  must be resolved at trial.  Fed. R. Civ. P. 56(e);

20  <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The

21  non-moving party must make an affirmative showing on all

22  matters placed in issue by the motion as to which it has

23  the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322;

24  <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W.

25  Schwarzer, A. Wallace Tashima & James M. Wagstaffe,

26  <u>Federal Civil Procedure Before Trial</u> § 14:144.

27

28

1    A genuine issue of material fact will exist "if the
2 evidence is such that a reasonable jury could return a
3 verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at
4 248.   In ruling on a motion for summary judgment, the
5 Court construes the evidence in the light most favorable
6 to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d
7 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v.</u>
8 <u>Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31
9 (9th Cir. 1987).

10                    **III. DISCUSSION**
11    **A.   Facts**
12    The facts below are "admitted to exist without
13 controversy" for the purposes of this Motion except where
14 noted.  <u>See</u> Local Rule 56-3.[2]
15

16 **January 2006 Fire and February 2006 Payment**
17    Plaintiffs owned a home in Hemet, California built
18 several decades ago and insured by Defendant Allstate at
19 the time it suffered damage in a January 1, 2006 fire.
20 (Def.'s SUF ¶ 1-3.)  Plaintiffs' policy did not include
21 coverage for building code upgrades.  (Defendant's Notice
22 of Lodgment of Evidence ("NOL") Ex. 1.)
23

24    _____

25    [2]Plaintiffs' Statement of Genuine Issues of Material
   Fact ("SGMF") stated that Plaintiffs agreed with most of
26 the statements in Defendant's Statement of Uncontroverted
   Facts ("Def.'s SUF").  Where Plaintiffs disagreed with
27 the facts offered by Defendant, they disagreed with the
   interpretation of the quotes presented by Defendant but
28 did not dispute their veracity.  (SGMF ¶¶ 5-8.)

                              4

1      Plaintiffs promptly made a claim to Defendant for

2  benefits under the fire insurance policy it issued to

3  them.  By February 15, 2006, Defendant had inspected the

4  property, calculated the actual cash value of the damage,

5  prepared an estimate of the cost of repair, and sent

6  Plaintiffs a summary of the claim prepared by an

7  insurance adjuster as well as a letter explaining the

8  payment and a check for approximately $37,000.  (Def.'s

9  SUF ¶ 4; NOL Exs. 3-5.)[3]  Maria Gurrola endorsed the

10 check and Bank of America processed it on April 10, 2006.

11 (NOL Exs. 4-6.)

12

13     Plaintiffs retained attorney Sanford Kassel as

14 counsel regarding their claim.  Defendant responded to an

15 October 6, 2006 letter from Plaintiffs' counsel on or

16 about October 19, 2006, stating the "structure claim" had

17 been estimated and paid, and it could "assist" Plaintiffs

18 if they were "interested in resolving the claim

19 pertaining to the fire related damages to the building

20 structure."  The letter reminded Plaintiffs they had one

21 year from the inception of the damage to bring suit on

22 the policy.  (NOL Ex. 7.)

23 ///

24

25

26     [3]This value was less than the amount required to
   rebuild the home because the home was built so long ago
27 that substantial funds would be required to bring it into
   compliance with current building codes.  The policy did
28 not afford coverage for those costs.

**November 2006 Inspection and December 2006 Payment**

In late November 2006, both parties' representatives, as well as a contractor and a structural engineer, inspected the property again. (NOL Ex. 8.) After this inspection, Defendant wrote to Plaintiffs' counsel that Defendant would remit promptly any additional payment due Plaintiffs for an adjustment in the cash value of the claim. (NOL Ex. 8 (letter dated November 30, 2006); SGMF ¶ 12.)

Shortly thereafter, Defendant contacted Plaintiffs directly in a letter dated December 7, 2006. (Plaintiffs' Notice of Lodgment of Evidence ("Pl.'s NOL") Ex.1.) Defendant informed Plaintiffs that based on the November 2006 inspection, Defendant would pay an additional $1,828.45 pursuant to a "settlement agreement related to supplemental repairs . . . ." (Id.)[4]

Seven days later, in a letter to Plaintiffs dated December 14, 2006, Defendant enclosed a check for $1,828.45 as "settlement of the supplement[al] [sic] estimate" that had taken place in conjunction with the November 2006 inspection. (NOL Ex. 9.) Defendant

---

[4]The December 7, 2006 letter also informed Plaintiffs that they could "make a claim for the recoverable depreciation for an amount in excess of actual cash value" by "repair[ing], rebuild[ing] or replac[ing] the damaged property within one year of the actual cash value payment." (Id.) No work has been done. (Declaration of Patricia Bobbs ("Bobbs Decl.") ¶ 16.)

stated: "This payment concludes our claim handling based
upon the scope related to the fire damage to your home .
. . bottom line is that Allstate has paid what we believe
to be the actual cash value of the repairs necessary as a
result of this fire."  (NOL Ex. 9.)

**December 2006 and February 2007 Checks**

Defendant has produced copies of two checks, each for
$1,828.45, the amount mentioned in the December 7, 2006
and December 14, 2006 letters as the settlement entered
into pursuant to the November 2006 inspection.  (<u>See</u>
Pl.'s NOL Ex. 1; NOL Exs. 9, 10; Supplemental Declaration
of Patricia Bobbs ("Bobbs Supp'l Decl.") Ex. 16.)  The
first is dated December 14, 2006 and the second is dated
February 7, 2007.  Both checks bear the same amount,
claim number, and policy number and both state that they
are "Payment for DWELLING Coverage for FIRE Loss of
01/01/2006."  (<u>See</u> NOL Ex. 10; Bobbs Supp'l Decl. Ex.
16.)

According to Defendant, the first check was issued in
December 2006 and addressed to "Maria Gurrola, Jose
Gurrola."  (Bobbs Supp'l Decl. Ex. 16.)  Plaintiffs'
public insurance adjustor requested that Defendant cancel
the December 2006 check and re-issue it in the name of
Maria Gurrola and her public insurance adjustor, because

José Gurrola had died.[5]   (Reply 2 n.3.)  Defendant

acceded to this request, cancelled the check and, on

February 7, 2007, re-issued a check for $1,828.45 to

"Maria Gurrola and and [*sic*] Cross Check."  (NOL Ex. 10;

Bobbs Supp'l Decl. Ex. 16.)  Bank of America processed

the February 2007 check on February 28, 2007.  (NOL Ex.

10.)  Plaintiff has not produced evidence conflicting

with Defendant's account of these events.

**Acknowledgment of the One-Year Period**

     Meanwhile, sometime in the fall or winter of 2006,

Plaintiffs terminated Sanford Kassel's representation of

them in their dealings with Defendant.  By December 14,

2006, Defendant had received written confirmation that

Mr. Kassel no longer represented Plaintiffs.  (See NOL

Ex. 9.)


     On December 15, 2006, Maria Gurrola signed an

"Acknowledgment of Receipt of File/Documents" from

Sanford Kassel.  She "acknowledge[d] that [she] was

previously informed of [her] one (1) year statute of

limitations to file a Complaint in this matter" and that

she was "fully aware of [her] one (1) year statute of

limitations."  (Def.'s SUF ¶ 7, NOL Ex. 11; see

Declaration of Maria Gurrola ("Gurrola Decl.") ¶ 2.)

_____

     [5]After Plaintiffs terminated Sanford Kassel's
representation of them, Plaintiffs retained a public
insurance adjustor.

**January 2007 Request for Reconsideration and April 2007 Letter**

In response to a January 5, 2007 inquiry, Defendant sent Plaintiffs' public insurance adjustor a letter dated April 17, 2007.  Defendant dismissed the legal arguments raised in the January letter as irrelevant and stated that "the one-year policy statute of limitations commenced to run . . . October 19, 2006 . . ."  (Def.'s SUF ¶ 8, NOL Ex. 12.)  The letter indicated that a copy was sent to Maria Gurrola.

In a letter dated June 8, 2007 to Plaintiffs' public insurance adjustor, Defendant again reminded Plaintiffs that the "one-year policy statute of limitations commenced . . . October 19, 2006" and that Plaintiffs "ha[d] until October 19, 2007 to file any legal action against [Defendant]."  (Def.'s SUF ¶ 9; NOL Ex. 13.)  This letter also indicated that a copy was sent to Maria Gurrola.

Defendant informed Plaintiffs of the October 19, 2007 deadline a fourth time in a letter dated October 10, 2007 addressed to Robert Silverberg, Plaintiffs' counsel in this lawsuit.  The letter stated: "Ms. Gurrola has until October 19, 2007 to commence any legal action against [Defendant]."  (Def's SUF ¶ 10; NOL Ex. 14.)

**March 2008 Filing of this Action**

Plaintiffs filed suit on March 7, 2008.  (Def.'s SUF ¶ 11.)  Defendant filed a Motion for Summary Judgment ("Mot.") on September 12, 2008.  Plaintiffs filed their Memorandum of Points and Authorities in Opposition ("Opp'n") on September 22, 2008.  Defendant filed its Reply ("Reply") on September 26, 2008.

**B.   Tolling of the One-Year Period**

The fire insurance policy on which Plaintiffs base their suit is governed by California Insurance Code sections 2070 and 2071.  These statutes mandate uniform language for fire insurance policies and require filing of any suit on a policy within twelve months, or one year, of the inception of the loss.  Cal. Ins. Code §§ 2070, 2071.  California insurers have a duty to inform insureds about this one-year period if the insurer denies a claim; if the insurer settles the claim it bears no such burden.  See Marselis v. Allstate Ins. Co., 121 Cal. App. 4th 122, 126 (2004).

The California Supreme Court has found that the one-year period is equitably tolled while the insurer processes the claim.  Prudential-LMI Comm. Ins. v. Superior Court, 51 Cal. 3d 674, 693 (1990).  The year during which a plaintiff must file suit begins when the insurer settles the claim or denies it in writing.  Id.

1  (one-year period commences when insurer denies coverage);
2  Marselis, 121 Cal. App. 4th at 124 (one-year period
3  begins to run when claim is settled).  An insurer's
4  statement that no further benefits will be paid has been
5  construed as a denial and also will begin the one-year
6  period.  Migliore v. Mid-Century Ins. Co., 97 Cal. App.
7  4th 592, 605 (2002).

8

9      After the claim has been investigated and denied, no
10  tolling of the one-year period occurs based on an
11  insured's requests for reconsideration of an insurer's
12  failure to pay.  Singh v. Allstate Ins. Co., 63 Cal. App.
13  4th 135, 142 (1998).

14

15      Here, a fire damaged Plaintiffs' house on January 1,
16  2006 and they filed suit on March 7, 2008.  Hence, this
17  motion presents a single issue:  whether or not the one-
18  year period provided by statute had expired before
19  Plaintiffs filed suit.  In other words, the Court must
20  determine when the equitable tolling in effect during the
21  insurer's investigation ended.

22

23      In order for Plaintiffs' complaint to have been filed
24  timely, the tolling period must have been in effect until
25  sometime on or after March 7, 2007.  Defendant contends
26  that the tolling period ended in October or, at the
27  latest, December, of 2006, when its investigation ended,
28

1  it paid a settlement amount, and it denied further
2  payment on the claim.  Plaintiffs contend that
3  Defendant's February 2007 check and the language of its
4  December 2006 letter continued to toll the commencement
5  of the one-year period.

6

7      The Court considers first when the one-year
8  limitations period began.  Under Prudential and its
9  progeny, the one-year period for filing the complaint was
10 tolled while the insurer processed the claim and began
11 when the claim was settled or denied.  See Prudential-
12 LMI, 51 Cal. 3d at 693; Marselis, 121 Cal. App. 4th at
13 124; Migliore, 97 Cal. App. 4th at 605.

14

15     **1.   October 2006**
16     The parties offer differing interpretations of the
17 letter Defendant sent to Plaintiffs' counsel in October
18 2006.  (See NOL Ex. 7.)  Defendant relies on the portion
19 of that document which states "[t]he structure claim has
20 been estimated and the actual cash value has been paid,"
21 to argue that the October 2006 letter signaled that
22 Defendant had finished processing the claim, and
23 therefore the one-year period began on that date.  (See
24 Mot. 4; Reply 1.)

25

26     This argument is flawed, however.  As Plaintiffs
27 note, the October 2006 letter indicated in the same
28

1   paragraph that some aspects of the claim pertaining to

2   the fire-related damages to the building structure had

3   not been resolved.  Furthermore, the October 2006 letter

4   suggests-- but does not state unequivocally-- that

5   further payment is forthcoming.  See Singh, 63 Cal. App.

6   at 142.  Accordingly, the Court finds that the October

7   2006 letter did not end the tolling of the one-year

8   period.  See Migliore, 97 Cal. App. 4th at 605.

9

10      **2.  December 2006**

11      Defendant argues in the alternative that tolling of

12  the one-year period ended in December 2006, when

13  Defendant wrote to Plaintiffs that it had "conclude[d]"

14  its processing of their claim and that the "bottom line

15  [wa]s that Allstate has paid what we believe to be the

16  actual cash value of the repairs necessary as a result of

17  the fire."  (Mot. 4; NOL Ex. 9.)  With this letter

18  Defendant enclosed a settlement check for $1,828.45 made

19  payable to Maria and José Gurrola.  (See NOL Ex. 9; Bobbs

20  Supp'l Decl. Ex. 16.)

21

22      The December 2006 letter ended tolling of the one-

23  year period.  It clearly stated that "no further benefits

24  w[ould] be provided beyond those previously paid," as

25  required by Migliore.  See 97 Cal. App. 4th at 605

26  (tolling of the one-year period ended when insurer denied

27  plaintiff's claim by refusing to make further payments).

28

1  Here Defendant wrote: the "bottom line is that Allstate
2  has paid what we believe to be the actual cash value of
3  the repairs necessary as a result of the fire."  As
4  Defendant denied the claim in December 2006, any suit
5  filed after December 2007 was untimely.

6

7      Plaintiffs cite <u>Spray, Gould & Bowers v. Associated</u>
8  <u>International Insurance Company</u>, 71 Cal. App. 4th 1260
9  (1999) to argue that Defendant had a duty to warn them of
10  the one-year period and should be estopped from asserting
11  the statute of limitations because it failed to notify
12  them of it in the December 2006 letter.  (Opp'n 6.)[6]

13

14      Plaintiffs are correct that the December 2006 letter
15  did not mention the one-year statute of limitations.
16  (NOL Ex. 9.)  Nevertheless, their argument fails.  The
17  insurer in <u>Spray</u> had a duty to inform the insured about
18  the one-year period but remained silent.  <u>See Spray</u>, 71
19  Cal. App. at 1264-65.  Assuming that the insurer here
20  denied the claim rather than settling it, as discussed

21

22  _____

      [6]  The duty to warn of the one-year period comes into
23  play if the claim is denied.  Under <u>Migliore</u>, Defendant's
    statement that it would not make further payments was a
24  denial and triggered that duty.  97 Cal. App. 4th at 603.

25      Defendant's 2006 payment and letter could, however,
    also be construed as a "settlement" because the letter
26  refers to the enclosed payment as a "settlement" check.
    If Defendant settled the claim in December 2006, it ended
27  tolling of the one-year period and did not require
    Defendant to inform Plaintiffs of the one-year period.
28  <u>See Marselis</u>, 121 Cal. App. at 126.

                              14

*supra* at note 6, the insurer here informed Plaintiffs or Plaintiffs' representatives about the one-year provision four times between October 2006 and October 2007.  (NOL Ex. 7 (October 2006 letter); NOL Ex. 12 (April 2007 letter); NOL Ex. 13 (June 2007 letter); NOL Ex. 14 (October 2007 letter).)  Plaintiffs' argument that Defendant is estopped from relying on the one-year limit is therefore unpersuasive.

### 3.  February 2007

Plaintiffs also suggest the February 2007 check prevents the termination of the tolling of the one-year period in December 2006; that is, it prevents the one-year period from ending in December 2007.  (Opp'n 5.)  As explained by California courts, the one-year period is tolled to prevent stale claims while allowing the insured to obtain information from the insurer about how it will handle the claim.  <u>Singh</u>, 63 Cal. App. at 142; <u>Prudential-LMI</u>, 51 Cal. 3d at 691-92.

Here the amount of the February 2007 check, $1,828.45, was based on the November 2006 inspection.  A check for this amount was issued in December 2006 and only re-issued in February 2007 at the request of Maria Gurrola.  The December 2006 and February 2007 checks are issued under the same policy number, claim number, and subject line.  (NOL Ex. 10; Reply 2 n.3; Bobbs Supp'l

1  Decl. Ex. 16.)  The February 2007 check was endorsed and
2  Bank of America processed it on February 27, 2007.

3

4      The policy behind tolling the one-year period is not
5  served by allowing the February 2007 check to prevent the
6  one-year period from beginning in December 2006 and
7  ending in December 2007.  Tolling can be appropriate
8  where a defendant's actions "project the expectation that
9  plaintiffs should hold their suit in abeyance."  <u>Singh</u>,
10 63 Cal. App. at 142 (declining to permit plaintiffs'
11 request for reconsideration to toll the one-year period).
12 Plaintiffs have cited no evidence to suggest that they
13 had a reasonable expectation that Defendant continued to
14 process their claim.  <u>See id.</u>  Plaintiffs have not
15 produced any letter accompanying the February 2007 check.
16 The February 2007 check on its own did not create any
17 expectation that Defendant's position had changed.  It
18 was simply a duplicate of the December 2006 check, re-
19 issued to accommodate Maria Gurrola's request regarding
20 the names of the payees.  (Reply 2 n.3; Bobbs Supp'l
21 Decl. Ex. 16.);[7] <u>see</u> <u>Singh</u>, 63 Cal. App. at 142.  Under

22

23      [7]Plaintiffs' argument that a suit filed on March 7,
   2008 is timely also is defeated by the endorsement and
24 cashing of the check no later than February 28, 2007, the
   date of Bank of America's processing stamp on the back of
25 the check.  (NOL Ex. 10.)

26      Cashing a check enclosed with a letter stating that
   the "bottom line" was that the insurer considered the
27 claim fully paid was arguably an accord and satisfaction.
   <u>Angle v. U.S. Fid. and Guar. Co.</u>, 201 Cal. App. 758, 764
28                                                (continued...)

1   these circumstances, the Court finds that the one-year

2   period began in December 2006 and ended in December 2007.

3

4        **4.   Request for Reconsideration**

5        Alternatively, Plaintiffs argue that the parties'

6   correspondence in the spring of 2007 continued to toll

7   commencement of the one-year period.   In January 2007, in

8   a letter not cited to the Court, Plaintiff's public

9   insurance adjustor apparently asked Defendant to

10  reconsider its payment on the claim.   Defendant responded

11  to this letter in April 2007 by reiterating its position

12  that no further payment would be forthcoming.   (NOL Ex.

13  12.)

14

15       Plaintiffs' request for reconsideration does not toll

16  the one-year period.   <u>See Singh</u>, 63 Cal. App. at 142.

17  "Once a claim has been made, the carrier has pursued its

18  investigation, and the claim has been denied, the

19  policies behind equitable tolling have been fulfilled."

20

21  _____

            [7](...continued)
22  (1962) (discussing in the context of a claim on a fire
    insurance policy the rule that acceptance of a check by a
23  creditor from a debtor for an amount less than that
    claimed by the creditor is an accord and satisfaction
24  where the check is given with "an explicit statement . .
    . that it is offered as full payment.").
25
         Even if Defendant were still processing the claim
26  after December 2006, as Plaintiffs argue, the last
    conceivable date to which the one-year period could be
27  tolled was February 27, 2007.   The last date on which a
    filing could have been timely was therefore February 27,
28  2008.   Plaintiffs did not file suit until March 8, 2008.

1    Id. at 142.  Granting Plaintiffs "a new period of

2    equitable tolling based merely on a *request* for

3    reconsideration would be anomalous" because it would

4    allow claimants to "extend the one-year statute at will

5    with successive periods of tolling."  Id. at 145.

6

7                        **IV. CONCLUSION**

8         For the reasons above, the Court finds the suit

9    untimely and GRANTS Defendant's Motion.

10

11

12   Dated:  October 6, 2008

                                       VIRGINIA A. PHILLIPS
                                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28